UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

MICHAEL ROBERT BARATKO and         Chapter 13
NAOMI ANN BARATKO,                 Case No. 8:12-bk-09469-KRM

      Debtors.
_____/

**MEMORANDUM OPINION ON DEBTORS' MOTION TO DETERMINE
SECURED STATUS OF BARRINGTON HOMEOWNERS ASSOCIATION, INC.
AND TO STRIP LIEN EFFECTIVE UPON DISCHARGE**

THIS MATTER came on for hearing on January 16, 2013, on the Debtors' Amended Motion to determine the secured status of a lien for unpaid assessments held by Barrington Homeowners Association, Inc.[1]  Following the initial hearing, the matter was continued until February 27, to provide time for written submissions.  Having considered the Motion and the materials filed in support of both positions, as well as the oral arguments of the parties, the Court will grant the Motion.

BACKGROUND

The Debtors acquired their current residence on March 28, 2002.  At that time, the Debtors executed a purchase money mortgage in favor of Universal American Mortgage Company, which was recorded on April 12, 2002.[2]  That mortgage was subsequently satisfied when the Debtors refinanced their home with Pinnacle Financial Corporation in 2003.[3]  As is common, after the initial refinancing, the Debtors' mortgage was sold and assigned at least three

---

[1] Doc. No. 36.

[2] Doc. No. 50-1, at pg. 1.

[3] *Id.* at 3.

times. According to the Debtors' schedules, the current holder of the 2003 mortgage is Residential Commercial Solutions, Inc. ("RCS"). It appears from the Hillsborough County public records that RCS received the assigned mortgage sometime between August 13, 2009, and August 31, 2009.[4] At the preliminary hearing and in Barrington's memorandum it was conceded that the mortgage held by RCS is under-secured.[5]

However, prior to the final assignment to RCS, Barrington Homeowners Association recorded a lien for unpaid assessments. Accordingly, Barrington has argued that either: (1) section 506 of the Bankruptcy Code does not apply to homeowners' association liens; or (2) Barrington's association lien has priority over the mortgage held by RCS.

## ANALYSIS

Following Judge Williamson's decision in *In re Plummer*,[6] Barrington's counsel stated at the January 16 hearing that they were "abandoning" their position that section 506 did not apply to association liens. However, to the extent that argument remains,[7] the Court concludes that section 506 applies in this situation and that the Eleventh Circuit's opinion in *Tanner*[8] permits the strip off the Barrington's lien if it is a wholly unsecured claim.[9]

---

[4] The public records search is unclear as to how RCS acquired the mortgage. The 2003 mortgage originated with Pinnacle Financial Services. By 2006, either through an acquisition of Pinnacle or an unrecorded assignment, the mortgage was allegedly owned by GMAC Mortgage Corporation. By 2009, through another acquisition or unrecorded assignment, the mortgage was allegedly the property of Countrywide Home Loans, Inc., who subsequently recorded an assignment to BAC Home Loans Servicing on August 13, 2009. Then, presumably through another unrecorded assignment, RCS asserted ownership when it filed a *lis pendens* action on August 31, 2009.

[5] *See* Doc. No. 36 at pg. 2.

[6] 484 B.R. 882 (Bankr. M.D. Fla. 2013).

[7] *See generally* Adv. Doc. No. 36.

[8] *Tanner v. FirstPlus Fin., Inc.* (*In re Tanner*), 217 F.3d 1357, 1358 (11th Cir. 2000).

[9] For the Court's reasoning, *see generally In re Plummer*, 484 B.R. 882 (Bankr. M.D. Fla. 2013).

Accordingly, the discussion must shift to whether Barrington's lien is senior to the mortgage held by RCS.  Barrington argues that because its lien was recorded on January 14, 2009, it holds superior priority to the mortgage assigned to RCS eight months later.  However, Barrington's argument ignores the fact that the underlying mortgage securing RCS' debt was recorded in 2003.  It is well settled that an assignee generally steps into the shoes of the assignor for all purposes, including lien priority.[10]  In fact, it is common for secured priority lenders to assign their claims to others during the pendency of a bankruptcy.  If a court were to hold that an assignment severed the priority of the underlying right, it would create an incredible restraint on alienation.  For example, senior debt would only enjoy priority status as long as it remained in the hands of the original owner.

Because the Court cannot find any support for the proposition that a debt loses its priority upon assignment, and because there is ample support to the contrary, the Court must conclude that the 2003 mortgage is superior to the 2009 lien recorded by Barrington.

Accordingly, the Court will GRANT the Debtors' motion in holding that Barrington's claim is an unsecured claim under section 506(a) due to its subordinated position to the under-secured mortgage of RCS.

**DONE** and **ORDERED** in Chambers at Tampa, Florida on February 27, 2013.

K. Rodney May
United States Bankruptcy Judge

Copies to be provided by CM/ECF service.

---

[10] *See, e.g.*, 29 WILLISTON ON CONTRACTS § 74:52 (4th Ed.) ("If the assignor was entitled to priority of payment from the debtor's estate, the assignee is entitled to the same priority, because the assignee is in effect enforcing the assignor's right.").